The second case we have today is Bacon et al. v. Avis Budget Group, Inc. et al. No. 18-3780 and Ms. Waterson and Mr. Cohn. Ms. Waterson, whenever you're ready. Yes. Good morning, Your Honors. May it please the Court. My name is Kim Waterson and I'm here today for defendant's appellant. I'd like to reserve two minutes for rebuttal, please. Not a problem. Okay. And maybe what I should do is start my timer, which I was going to try to start. I think the Court will appreciate that. No problem. You're on our time. Okay. Good. Why don't you start with jurisdiction? Yes. I was going to say, I was first going to address why this Court has jurisdiction over this appeal from the District Court's decision denying arbitration, a decision, and I hope I will have time to get to this. It's an outlier that can't be reconciled with controlling law, neither FAA principles nor the state contract law. The FAA says must be applied in an even-handed way. So I'm going to take up the jurisdictional questions first. They're related. Let me just frame it a little bit because you've got two cases out there, Devon Robotics and Sandvik. Is the correct jurisdictional analysis to apply that perhaps Devon Robotics determines whether there is a true motion to compel and then Sandvik ensures that we have jurisdiction over non-final orders denying a motion to compel? I'm just trying to somehow fit the two together. Your Honor, I agree with you and I'm not agreeing just to be agreeable. The Court asked the first question, Sandvik, and you broke them down exactly in the way that I would do this. Sandvik answers the specific question of what do we do when a court denies a motion to compel arbitration, but it doesn't reach a definitive decision as it did here on Issues 2 and 3 relating to the Costa Rica agreement and the online booking agreement. The Court essentially denied it without prejudice, let the parties live to fight another day, putting on additional proof. Does that deprive the Court of jurisdiction on those rulings? And this Court in Sandvik said conclusively, no. The Court has not deprived the jurisdiction. The Court has said, the district court that is, I'm not granting the motion to compel arbitration. I'm not ordering arbitration. You can go up. There's Sandvik, there's Quillian, there's Boomer, a variety of cases all cited in our letter to the Court. So not a controversial proposition there. Devin Robotics in this Court asked how does it fit in the mix or fit together with Sandvik. And what Devin Robotics does, it looks at when has a party actually moved to compel arbitration. I mean, as this Court knows, that involves circumstances where the defendants move for summary judgment on the merits. And then also in that merits-based summary judgment motion, asks for arbitration yet again. I went back and looked more at the history. The party evidently kept saying, we need to arbitrate, we need to arbitrate. So this case deals with the form of the motion, and it sets forth criteria to figure out when a motion falls within Section 16. And we meet all of those criteria. We move for summary judgment to compel arbitration. Why did we say summary judgment in our caption? Well, the Court directed us when it denied the initial motion to compel arbitration. It asked the parties to file one joint motion for partial summary judgment on the issue of arbitrability. And we captioned our motion, motion for summary judgment, adhering to the Court's directive to compel arbitration. It was the only issue raised in the motion. There was no litigation on the merits, either before the filing of this second motion. Nothing on the merits was discussed in the motion. And the order does only one thing. It denies my client's request for arbitration. So I think there isn't any conflict between Devon Robotics and Sandvik. I think they both deal with jurisdictional questions. The questions may be related, but they are different questions. Before we get to the merits, do my colleagues have any further questions, any questions on jurisdiction? It's sort of related. I wanted to just touch a little bit on Section 4 and Section 206. Section 4 of the FAA sets forth some requirements for filing a petition to compel arbitration. Obviously, this is a case in which there was a complaint filed, and as a response to pleading, there was the motion to dismiss in favor of arbitration. How do we superimpose the Section 4 requirements, since you're leaning on the FAA, in order to get this case to arbitration with what actually happened here? Well, I think, Your Honor, I want to go back to and look at, and I believe they are docket entries 16 and 17, and I will correct myself on rebuttal if I am wrong about that. No, you're correct. The first motion was not a motion to dismiss, if I may say this. It was a motion to compel arbitration. So that's what was filed. I'm looking at Defendant Payless Car Rental, Inc.'s notice of motion to compel arbitration. It was not a Rule 12b6 motion in the sense that we're saying the complaint doesn't state a claim upon which relief may be granted. It sought one thing and only one thing to compel arbitration. No, I understand that. My question, though, is the way that Section 4 is worded, it contemplates a circumstance where the initial event to start the federal action is a petition to compel arbitration. And here we have a situation where the initial event was the filing of a complaint and the response of pleading was a motion to compel. Your Honor, that's – Does it matter is my question. It doesn't matter, Your Honor. And I know sometimes it may be annoying to courts to hear a counsel say this, but I, in myriad circumstances, find myself in a situation where my client has a right to arbitrate. The plaintiff files a complaint. So if the court needs further support for this, either through docket searches or others, it is not at all atypical for the first filing in the federal district court to be a complaint filed by a plaintiff notwithstanding the existence of a valid and enforceable arbitration agreement. The defendant then whooped in and filed a motion to compel arbitration. I understand. So you're – I guess you're asking us to look at the language of Section 4, which says a manifestation of some sort of refusal to arbitrate has to occur before a petition can be filed. And you're, I guess, suggesting the filing of the complaint manifests a refusal to arbitrate and the response is we file some kind of application with the court to give notice, hey, we want to arbitrate. And so the events map on, although the actual procedural titles to them are different. Is that – Exactly. Exactly, Your Honor. Because that's – you know, there's two circumstances. Sometimes, you know, someone will ring up on the phone, and I'm not being colloquial about this, and say, hey, we have this dispute, we need to go to AAA, we need to go to JAMS, and the other side says, no, there's no arbitration. There are other circumstances where the first thing that a defendant sees manifesting an intent not to go to arbitration is the complaint that the plaintiff files. And then, you know, as the jurisprudence says, what that defendant needs to do is to promptly move to compel arbitration. Otherwise, if they participate in that action in the federal district court, they risk being deemed to have waived. So that's the typical first filing in circumstances where the counterparty has manifested its intent not to arbitrate through the filing of a complaint and invoking the judicial machinery. Okay, thank you. And one other question on this subject is with respect to Plaintiff Lee, you moved to compel arbitration in Costa Rica, and I'm sure we'll chat a bit about the Costa Rica transaction, but you didn't rely on Section 206, which talks about foreign arbitrations. And my question is why? Your Honor, I don't know if I have a satisfactory answer to that question, other than when the motion was filed, it sought to compel arbitration, and it didn't reference that section number. But I think that doesn't matter here because, again, we are in federal court and we are asking the court to compel arbitration and talking about FAA principles and other principles in 206 as part of the FAA. Thank you. Any further questions on jurisdiction? Let's go to the merits then. Let me start with New Jersey law. Okay. Go ahead, ma'am. Go ahead, Your Honor. I'm sorry. If we credit the district court's finding that the parties truly did not understand the term of art, quote, rental jacket, close quote, how can we hold that the language in the U.S. rental agreement provided reasonable notice under New Jersey law? Well, Your Honor, it did, and I think it did with the district court here. It imposed requirements for incorporation by reference that find no place in either New Jersey or Florida law. And, frankly, none of the plaintiffs said, if I may say this, that they didn't understand what the term rental jacket meant. And the question under control in contract law, contract law 101, when a party signs an agreement, even if they didn't read the agreement, even if they later, after the fact, says that they didn't understand the agreement. There is, in the absence of fraud, and there is no fraud asserted here, there is a conclusive presumption that the parties have read, understood, and will be bound by the terms of the agreement they signed. Now, here, the agreement that the document signs says, I agree the charges listed above are estimates and that I have reviewed and agreed to all notices and terms here and in the rental jacket. The parties then, the plaintiffs then, were given a single document that literally was a jacket and also said terms and conditions of the rental. So the question is not, you know, the plaintiff's subjective intent and understanding. Instead, it is, and we cite legions of cases through our briefs. So I'm summarizing what's encapsulated in Florida law, New Jersey law, this court's decision in Schwartz, and the legion of other cases, including rental jacket cases. The court looks at the agreement and the writings and asks whether the document was sufficiently described. It was. And was it ascertainable, and was there a mutual assent? The mutual assent. The district court here made a finding. My problem is, how do I get around that? I mean, I guess I'd have to say it's a clear error. Well, Your Honor, no, I think it's an error of law because what the district court did is it didn't make a factual finding per se, red light, green light. It made a finding that there can be no incorporation by reference if, one, there is no document number in the agreement identifying, or document number or date, identifying the incorporated document. There is no such requirement in the law, and by the way, plaintiffs don't even embrace and just try to justify the district court's decision based on that rationale. Second, the court says, I find that there was no incorporation by reference because the plaintiffs were not handed the rental jacket before they put their John or Jane Hancock on the rental agreement. There is, and this is where it's an error of law, there is no such requirement in New Jersey or Florida law, and I call this court's attention to a long list of cases cited in our brief, Edgewater, when Judge Greenaway was in the district court, Doe, inventory, recovery, Tantillo, New York Bay, in Florida, Avatar, Open Sea, and Luna, and this court's decision applying Pennsylvania law, that's been relied on in lots of other cases, in the Schwartz decision. But here we're applying New Jersey law, but New Jersey law has a beyond doubt requirement, that the identity has to be ascertained beyond doubt, and here you have a circumstance where you quoted us the language from the agreement about the charges, and it makes the reference to rental jacket, and then the document you would like us to claim has been incorporated by reference and has called itself something different. It calls itself a rental document jacket. I know it's one different word, but it is different, and it was not something that the plaintiff would have, they had already executed the agreement, and it wasn't even something that would be reasonable for them to have grabbed to look at when it was on the side of the rental associate's workstation. So beyond doubt is a different standard than Florida, and that's why I know you want us to look at all these other cases, but we have to look at that beyond doubt language, and I think I'm echoing what Judge Ambrose is saying in that the court did make some findings from which it made a conclusion about something beyond doubt. I have three things to say in terms of that, and I will focus just on New Jersey. The court made that conclusion, in my view, and I will get to the point about the jacket and the terms. First of all, to the extent that the court ruled that there were some requirements that the party needs to have received the document, the incorporated document, before signing the agreement, that is not part of New Jersey law. Again, I know these are district court decisions, but Edgewater, Inventory, Tantillo, New York Bay, and nor does Quinn require that the party... Judge Bevis, you're right. You cite a string of cases, but it's a straw man to say that it absolutely must be named or have a number. The point is there must be something that puts it beyond doubt, and there's neither a name, nor a document number, nor a clear heading, nor was it provided ahead of time. So it's true, a number or a name is only one way to put it beyond doubt, but your cases are not in this context, and they're not addressing consumers, and most of them are not even decided by New Jersey courts. I don't understand how we can say we can take this away from a jury under this very demanding... under this extremely demanding... I agree, Your Honor, that it's demanding, but let me answer the question this way, and I will in a moment flip to another piece of paper that I have where we do have consumer cases. In this circumstance, there was only one additional document handed to the plaintiff, and we know it doesn't have to be handed to the plaintiff before it's signed. It was literally a jacket. The document that was signed describes literally what the document was. It was a jacket. They were handed a jacket, and it says you agree to the terms in the jacket, and the jacket says here are the terms. This is not different than the other cases where a party signed an agreement and they were told that you will abide by the terms and conditions. You will abide by the terms in another document. It's not as if the plaintiffs were handed a giant stack of documents with 97 pages where they were handed multiple documents. It's understated, though. The jacket is not handed to the plaintiff at the time the plaintiff signs. The jacket is handed to the plaintiff after the plaintiff signs. So the plaintiff doesn't know there's a literal jacket it's about to get until after the plaintiff has signed on the dotted line, correct? Correct. They are told that you are agreeing to what's in this rental agreement and the rental jacket, and the cases are legion that say, not even Quinn says, that you have to get the document, the incorporated document, before you sign the agreement. And I think it's notable here, too, and there's no dispute on this on the part of plaintiffs, the transaction isn't completed until after that and the plaintiff, the person renting the car, is handed the key. They would not be charged if they said, I don't want to participate in this agreement. But, again, I'm going back to the district court. Again, these are not, in my mind, factual findings. They are an importation of legal requirements that do not exist in New Jersey law, and that is, one, you need a document name and number. Two, it must be handed to you before you sign. There is nothing in New Jersey law that says that, and there are cases applying New Jersey law that find that you do not need that. Not even Quinn says you need to get it before you sign it. And third, that in a circumstance where it says rental jacket, the jacket is the only additional document that the party received, and it doesn't matter that it wasn't before they signed it. It literally is a jacket, so there can't be any confusion about what it is. And, moreover, the jacket itself says terms and conditions. In the original agreement, you're agreeing to all notices and terms here and in the rental jacket. You're handed a jacket, and the jacket says here are the terms. Why in your briefing do you speak of the fact that the jacket was, quote, available to the consumer, the plaintiff in this case? When you're saying it doesn't matter, you just argue basically it doesn't matter whether it was available to them before they signed it, they were on notice it existed. But then you make this argument about it being available to them. If you're going to lean on that point, how do you say that it's actually available when it was in the space of the rental agent? No reasonable consumer is going to reach across and say, gee, I see another piece of paper there. I think I'll go at it. Judge Schwartz, we make that point because cases do talk about that the party needs to have an opportunity to review if it requests review. So we wanted to make it very clear that this isn't a circumstance where this was some document, you know, hidden in the recesses of some other office and that it wasn't available. If a party had said, and again, this is the only requirement that the cases speak to, an opportunity to review upon request. So we wanted to make the fact very clear when the judge said that he wanted more facts after the first motion. You know, what are the circumstances? What does the rental process look like? So that if Ms. Bacon, for instance, was standing at the payless counter and she looked at this and said, oh, I see I am agreeing to all notices and terms here and in the rental jacket, may I review the rental jacket? It was there readily available. Thank you. Any further questions? No. All right. We'll get you back on rebuttal, Ms. Watterson. Okay. Thank you very much. And I guess I will leave the other issues for the brief. Thank you very much. Thank you. Mr. Cohn. Thank you, Your Honors. May it please the Court, Greg Cohn from Naval Rights on behalf of the plaintiffs of Cali in this matter. If the Court wants, I guess I can start where Ms. Watterson started, start with jurisdiction, if that's okay. If you would, please. Sure. The issue with jurisdiction here is that there's a difference, as this Court pointed out in requesting the supplemental briefings, between Claim 1, which the Court fully decided and did not enforce the agreement to arbitrate, and Claims 2 and 3, where the Court left open issues that needed to be determined before the Court could either grant or deny the defendant's motion to compel arbitration. Evan Robotics makes it clear that Section 16 delineates specific events from which there's an immediate interlocutory appeal and it whits those out. What we haven't heard from the defendants in this matter is under what Section 16 item they're coming before this Court with jurisdiction on. They didn't put it in their supplemental briefing. I didn't hear anything from Ms. Watterson this morning. When my review of Section 16, it's not A1A, it's not a refusal of a stay. It's not A1B, a petition under Section 4. It's not A1C, an application under 206. So I don't know what it is that they're relying on to get to jurisdiction. And this Court asked Ms. Watterson about Section 4, and Section 4 is inapplicable because in Section 4, if there's a question as to arbitrability, the Court shall direct that the proceedings go to a trial before a decision is made. One of the questions, the first question I asked of Ms. Watterson is trying to get the correct jurisdictional analysis, the correct path. Do we first apply Devin Robotics to determine whether there's a true motion to compel, and then SANVIC to ensure we have jurisdiction over non-final orders denying a motion to compel? Yes, sir. I think the first step is Devin Robotics. And that first step is to look at what was asked for, and Devin Robotics makes it clear. I mean, there's, I guess, maybe some internal conflict between the earlier pages of Devin Robotics with the end of Devin Robotics. But, I mean, the Court makes it clear that you have to have a denial of a petition or an application, either under Section 4 or Section 206, for there to be jurisdiction of an interlocutory appeal issue. And here, we don't have that. We don't have it under Section 4, and we don't have it under Section 206. Ms. Watterson admitted when the Court asked that there was no petition made under Section 206 as related to Ms. Lee. So, on that analysis, I'm not sure we get to SANVIC and whether or not it's final. However, if we do get to SANVIC and we look at whether or not you're allowed to appeal a non-final determination, which arguably SANVIC would allow you to do, the fact here is this issue of whether or not there's competent evidence, let's stick with, I guess, the booking website Claim 3 issue, whether or not there's competent evidence, the Court will review that issue, determine either to affirm or not, and then we go back for determination on the motion to compel arbitration, which is what we should be doing anyway. So, I'm not sure how this is anything final in a manner in which this Court's time and effort being used to rule on that, which is why interlocutory appeals aren't favored and shouldn't be done piecemeal, is because that's exactly what would happen. This would turn into a piecemeal appeal on this booking website issue, and we go back and forth between the District Court and this Court to determine whether or not there's arbitration. When a final determination is made, I assume, if the plaintiffs are correct and there is no arbitration under those booking websites, that this Court will then have jurisdiction and rule, but it seems to me that we're looking at a piecemeal appeal. Mr. Cohn, can I ask you to engage – it's Judge Rivas – ask you to engage with Devin Robotics. Devin Robotics follows the Tenth Circuit and maybe the Fourth saying, we're going to take a functional approach, we're going to focus on what the relief is that's sought, and, you know, even denials without prejudice can qualify here. So, the relief sought – the only relief being sought is to compel arbitration, and the only reason it's captioned as a motion for summary judgment is that's what the District Court told your adversaries to do. So, how is Devin Robotics not dispositive here in saying, the only relief here is sought is to compel arbitration, therefore we can review it, and, you know, piecemeal or not, that's what Section 4 and Section 206, you know, via Section 16 are – what Congress authorized. Your Honor, I don't disagree with you. I believe the manner in which this motion is either titled or the relief sought is not disputed by us at any point in time in this case. They asked for a motion to compel arbitration. That's been the case since the first motion that they made in law. What I find in Devin Robotics is the court's statement that Section 16 needs to be strictly construed to only what's enumerated, and based on what's enumerated, I can't find where Claims 2 and 3 fit based on what was raised by the defendants. But doesn't Sandovic interpret what Section 16 orders – what type of orders are captured by Section 16, including those where a district court declines to rule on the motion, hence denying it without prejudice? Like, how do we ignore Sandovic? It might not be textual in there, but certainly Sandovic interpreted as being covered. Yes, Sandovic, you know, appears to indicate that if the district court doesn't feel, you know, ready to make a definitive decision on whether to order arbitration, you can appeal it. But, again, that's really not what the district court did here. They didn't not feel ready to do it. They just said the facts before us aren't sufficient for us to make a determination, and that fault lies with the way the defendants presented their evidence. Well, that has to relate to the website issue, but it's still a denial with – it's tantamount to a denial without prejudice. And then with respect to Ms. Lee, the court denied the motion on a motion basis and ordered a trial. So, are you saying that Sandovic doesn't capture those two types of orders? And if so, why aren't they captured by Sandovic? Let's start with Ms. Lee first. Okay. As Your Honor pointed out with Section 4, let's look at what Section 4 states. And Section 4 states that if the making of the arbitration agreement is at issue, the court shall proceed primarily to trial. Don't we need to do that first before we can come up here? I think that's the reading of Section 4 would require that to occur for Ms. Lee before we got here, even though arguably, as the court mentioned earlier, maybe Section 206 is what should apply to her, but no one made an application under Section 206 for Ms. Lee. As it relates to the booking website, you know, I don't disagree with Your Honor's reading that it could be read to pertain to that situation. But if we're going to look at finality and, you know, we cited cases in our supplemental brief discussing when an order is considered final, more discovery for the district court to make its ruling because, again, if this court handles and addresses the competent evidence issue on that claim, we're just back to the district court for the district court to do, you know, a choice of law analysis, a SOAP analysis on what claims are part of or under the arbitration agreement. So there's a lot more to do on that, and doing it piecemeal doesn't seem to be what these cases would want. Thank you. Thank you, Your Honor. If I may, I'm going to move on to the incorporation by reference. Yeah. On the rental jacket, I mean, Ms. Watterson has mentioned a number of other cases. Should we be concerned, as several other district courts have found, that rental agreements incorporated the terms in the rental jacket? In other words, are we really just splitting hairs here? We are not, Your Honor. And I think it might have been Judge Bevis that pointed this out. Sorry, I can't distinguish all the voices. There's a judge in there. I'm sorry. So I believe Judge Bevis pointed this out. All the cases relied upon by the defendants in this matter are between sophisticated commercial entities, and were all rejected by the district court for various reasons. The other big issue with the cases that are relied upon by them are all on motions to compel arbitration without a factual record. Here, the district court denied arbitration the first time and said, go do some discovery. We spent eight months doing discovery. The defendants were permitted to turn over every rock to determine the intent of the plaintiffs in entering into this contract so that they can prove that there was mutual assent. That's what they asked for. That's what they asked the court to do. They said, look, it matters what the plaintiffs did. So here, we went and developed that full factual record, and the district court, based on that full record, analyzed the transaction, and analyzed the New Jersey and Florida law, and found that the rental jacket was not incorporated by reference. So the cases relied upon by defendants failed for those reasons. They're looking at it just from a piece of paper with no facts. Here, the facts clearly show that there's no incorporation by reference because the plaintiffs weren't provided the rental jacket prior to signing the rental agreement, right? The rental jacket only was provided after a legally binding agreement was entered into with Taylor. The plaintiffs did not know what a rental jacket was at the time of the rental. I know Ms. Watterson said there's no testimony that they didn't know what it was, but there's plenty of testimony in the record. They suppose all seven plaintiffs, and every one of them to a T, said I have no idea what a rental jacket was, that it contained some other terms and conditions, and that it had an arbitration provision. Also, the defendants didn't identify or mention the word rental jacket at all during the transaction. That's another admission from the defendants factually in this case. And the rental jackets were not available. The court already brought up the point, why are you arguing this availability thing? And Ms. Watterson said, well, because they have to have the opportunity to review it, so we didn't want to make it as if it was in some other building. It might as well have been. I mean, the court pointed out correctly, you look at the pictures, this document could have been as well as in a different building or a different country where it was hidden behind the rental counter where the customer is supposed to reach over and grab it. If a customer doesn't know that it exists, they can't have an opportunity to review it, and it's not available. If I could ask you to focus on the language of Florida law. I talked with your attorney about the beyond doubt verbiage of New Jersey, but about the Florida law, which uses a more forgiving standard, shall we say, from a defendant's point of view, not sufficiently described. In this instance, we do have the language that your adversary and I talked about, the terms here and in the rental jacket, and the document that everybody's calling the rental jacket calls itself a rental document jacket. Why isn't that sufficiently described? Sure, Your Honor. So, under New Jersey law, obviously... I'm focusing on Florida law. Yes, Your Honor. Yes. Even though New Jersey has a little bit more of an exacting standard than Florida, Florida law, as you said, it requires it to be sufficiently described or referred to, and that's still not the case here. It doesn't have to be any more exacting than that. Your Honor points to the language. If you look at, as I'm sure the court did, the joint appendix, and I'm looking at Joint Appendix 217, the rental jacket terms, it says, I have reviewed and agreed to all notices and terms here and in the rental jacket, and it's filled with typos, spacing issues and problems that make it even harder to read and understand. The document they seek to then incorporate, when it's folded and given to the client or the customer, it says, Payless Car Rental on the front, has your name, the car number, the space number where your car is located, the return date, the gas usage, and roadside assistance information on the cover. That's the cover of the document. That doesn't identify at all what it is. To even get to an identification of a title of the document, you have to open it up where it's defined as rental terms and conditions. There's no word jacket in there at all at any point in time. You have the testimony of the plaintiff here that says, I have no idea what this term rental jacket is, and I think it's important to note that unlike the cases cited by the defendant, and she said there's a list of them, there is, and every one of them has been distinguished by the district court correctly, those terms and conditions that they referred to were capitalized. Yeah, I agree with you on that. But if you continue on, the example I'm looking at is JA-220, but I imagine we're looking at the same document, just different plaintiffs. You're right. It says, and the other panels of this, quote, rental document jacket. So it does have the words there. I take your point. I understand what you mean when you say it wasn't on the cover page, and in order to have seen it, presumably you had to open it up and sort of read the panels within the jacket. But you agree with me that the word rental document jacket is in the document that we're all calling the rental jacket, correct? Your Honor, if the customer, after they sign a binding agreement, gets another document, has to read the fine print of that document to determine what it may or may not be called, I don't think it's sufficiently described or referred to. If we're that far along in the process, we can't have something that's sufficiently described. It has to be sufficiently described in the rental agreement, which is a one-page document with no capitalized terms as to the fact that a rental jacket would be the title or another document. Right? We don't have that, so how can you say that's sufficiently described? And, again, unlike all these other cases relied upon by the defendant, here we have testimony and we know whether or not this was sufficiently described. The defendant asked that question to the plaintiff, and the plaintiff said, I don't know what you're talking about. I never knew what a rental jacket was. I thought it was a piece of paper that said where my car was located, which is what it looks like to everybody. And, again, you only can determine that after you get it, which is after you sign the legally binding agreement. So how can something be sufficiently described if no one understands what it is? I understand your point. If I could ask you about a different case, Luna v. Alamo Rentable. In Luna, the court said that was incorporated by reference, the rental jacket. So how is our case different from Luna? It was a Florida case from 2006. If you don't know it, I totally understand. No, no, no, I have it. I'm trying to flip through my notes so I can find it. Take your time. You better wait for half a second. Sorry, Your Honor. Here we go. Okay. So the difference between Luna and the facts that we have here, and this is in our brief, in Luna, the rental jacket was specifically identified, right? The cover of the jacket referred to it as the rental agreement jacket. That was the cover of the document. It was a capitalized form of art that was also used in the rental agreement, right? That's unlike here where the rental jacket is not identified by name on the actual document. And that would honestly get back to what I just stated, Your Honor. I don't want to waste the court's time and repeat myself. But in Luna, the difference is that it was specifically identified with the exact terms, with the capitalization, so that somebody reading the rental agreement might understand that there is another document that would have additional terms and conditions. And again, you've got to look at the facts here. Although Ms. Watterson said there was no factual determinations made by the district court, I don't believe that to be true. In making its decision under Florida law and under New Jersey law, the district court did make factual determinations. It determined factually that the defendants by design did not provide the rental jacket until after the rental contract was signed so that the document was referred to, right? The district court made lots of factual findings, calling this not even a close case as to whether or not the document was sufficiently described, whether under New Jersey or Florida law. And I believe the district court. This was not a close case. There's no way that this term, this industry jargon use of the words rental jacket in lowercase letters, could allow any customer, a person off the street, let them figure out that that meant there was something else that contained more terms that would bind them to arbitration. The district court twice found that not to be the case and on the second time made these factual determinations. And I don't know how we get around that. And Ms. Watterson's brief doesn't get around that and her argument today doesn't get around that. All that they're doing is regurgitating the same arguments that they raised twice in the district court and lost. And they're asking this court, you know, maybe a third time's the charm for them, that this court finds incorporation by reference. But I don't see it. I don't see, based on any of the law that's cited here, how something as innocuous as the term rental jacket could be a sufficient description of any type of document. It doesn't say the rental jacket's terms and conditions, doesn't say that, isn't capitalized, doesn't mention that there's an R provision, which is, again, something that's in a bunch of the cases that the defendants rely on. Some of them actually point out that the arbitration provision contains additional terms and conditions. Again, that's not the case here. There's just nothing here that would allow this court to find that there's any sufficient specificity. And the district court clearly appreciated that and clearly found that you cannot force a customer in this situation to arbitrate these claims. Thank you. Thank you. Any questions of Judge Peebas? No. Thank you very much. And we'll hear from Ms. Waters on rebuttal then. I thank you, Your Honors. As I always say when I begin rebuttal, I have three points to make. They may not seamlessly fit together in elegant oratory, but let me make them. First of all, I'd like to call this court's attention, as we say, in our all-important standard of review section of the brief, that this court, and I cite Guidotti, engages in a non-deferential plenary review of the district court's order denying arbitration. And I think where the rubber really hits the road in terms of the court's determination of no sufficient description or is a legal error with the key consideration, one of the key considerations being that it was not given to the plaintiffs prior to signing the agreement. That is simply not the law. Also, this notion of the jacket and there being confusion, as I was pointing out when I talked about the fact, none of the plaintiffs said they didn't get the jacket. They didn't get the all-important jacket that contained the terms. And I will not repeat myself again, but it's difficult to imagine what other document could be the rental jacket. They were only given one document. It literally was a jacket. And the plaintiffs were told when they signed to the agreement to look to the jacket for terms. And the jacket says, here are the terms. Moreover, when it comes to assertion that my friend on the other side makes about, well, there was fine print, they didn't know there was an arbitration agreement in there, et cetera, et cetera, et cetera, that really rubs up against the contract law 101, conclusive presumption, unless there has been some sort of fraud. And as we explain in our brief, there hasn't been fraud alleged, and it's difficult to prove that a person signing an agreement is presumed conclusively to have read the agreement, even if they said I didn't bother to read the agreement, even if they said because they didn't bother to read the agreement, I didn't know, for instance, there was an arbitration clause or a penalty clause or a forum selection clause in there. And then I think those are on the merits, and I don't think I have anything further to say on jurisdiction other than understand that we were permitted to appeal Issues 2 and 3. We did appeal Issues 2 and 3. My friend on the other side talks about needing a trial. We believe the record put before the district court on Issues 2 and 3, Costa Rica and the booking websites, were more than sufficient to meet our burden to establish that arbitration should be compelled with respect to Ms. Lee's agreement and that the booking websites provide an alternative reason to compel arbitration for all of the U.S. plaintiffs other than Wheeler who didn't book online, who only booked at the counter. Thank you very much. Thank you to both counsel for well-presented arguments, and we'll take the matter under consideration.